OPINION
{¶ 1} Appellant, Shawn M. Johnson, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, finding him to be a delinquent minor as a result of having committed the offenses of felonious assault, in violation of R.C.2903.11(A), a felony of the second degree and improperly discharging a firearm at or into a habitation, in violation of R.C. 2923.161, a felony of the second degree. On appeal, appellant presents a single assignment of error for our review:
The trial court erred in weighing the evidence and failing to hold the state to its burden of proof beyond a reasonable doubt, and in relying on the findings of the magistrate which were issued more than two months after the trial.
 {¶ 2} On April 23, 2004, a complaint was filed against appellant, alleging he was a delinquent minor, having committed the offenses of felonious assault and improperly discharging a firearm at or into a habitation. The complaint asserted appellant knowingly caused or attempted to cause physical harm to Michael Pennington ("Pennington"), by means of a handgun. The complaint further alleged appellant knowingly discharged a firearm at or into an occupied structure that was a permanent or temporary habitation of Wallace "Jake" Chaffin ("Chaffin.")[1] On May 18, 2004, the complaint was amended to add one firearm specification to each count.
 {¶ 3} A hearing was held on May 20, 2004 and May 24, 2004, before a magistrate for the cases involving Chaffin and Pennington. The evidence adduced at the hearing consists of the following.
 {¶ 4} Pennington testified that on September 11, 2003, at approximately 12:30 a.m., he and Chaffin were sitting on the front porch of Chaffin's home located at 259 Souder Avenue in Columbus, Ohio. Pennington observed appellant, appellant's brother and an unknown black male walk past Chaffin's home. Pennington testified appellant and his brother continued walking towards the right side of Chaffin's house. After they were a few feet away, appellant looked back at Pennington, said "hey Mike" and pointed a firearm at him. Pennington described the firearm as a chrome, semi-automatic pistol. Pennington testified he stood behind the screen door and shouted "Don't be waivin' that gun up here. There's kids up here." (May 24, 2004, Tr. at 35.) Pennington testified he went in Chaffin's house for approximately one minute and when he returned to the front porch, he witnessed the three men walk away from Chaffin's home.
 {¶ 5} Approximately five to ten minutes later, Pennington testified he witnessed Jennifer Sarten ("Sarten"), appellant's girlfriend, drive her car towards Chaffin's home. Appellant, his brother and the unidentified black male exited Sarten's car and ran towards the house, and shouted at Pennington and Chaffin to fight them. Pennington walked off of the front porch towards the men, and immediately stepped back on the porch because "they kept rushing at [him]." Subsequently, appellant walked away from Chaffin's home. Appellant's brother and the unknown black male remained at the property and continued to argue with Pennington and Chaffin.
 {¶ 6} Two to three minutes later, appellant returned with Sarten in her car. Appellant exited the car, and pointed the same firearm he had previously pointed at Pennington. Pennington and Chaffin ran into the home and shut the door. Immediately thereafter, Pennington testified, he witnessed a bullet come through the door and hit the television. Pennington testified that appellant was standing in the middle of the street directly in front of the door when he went into the house, and appellant was the only individual he witnessed that evening who was in possession of a firearm. After approximately five minutes, Pennington went outside to ensure that appellant had left. Then, Pennington called the police. In open court, Pennington identified appellant as the man who had pointed a firearm at him just before he witnessed a bullet come through the door of the residence he had entered seconds earlier.
 {¶ 7} Pennington testified he had known appellant for approximately one year prior to the incident, and that they were not "on good terms." Pennington acknowledged he had previously been convicted of providing false information, and he was currently an inmate at Ross Correctional Institution serving time on an unrelated burglary conviction. Pennington indicated he was not offered anything in exchange for his testimony.
 {¶ 8} On cross-examination, Pennington was questioned regarding a prior conviction of criminal damaging out of an incident involving Sarten's car. Pennington also indicated he never saw appellant fire a weapon that evening.
 {¶ 9} Columbus Police Officer Joshua Martin ("Martin"), testified on behalf of the State. On the date of the incident, Martin responded to a shooting incident at 259 South Souder Avenue in Columbus, Ohio. After he was inside the home, Martin testified he located one spent projectile on the floor in front of the television, which he turned over to the Crime Scene Search Unit.
 {¶ 10} On the date of the incident, Columbus Police Detective Michael Castle ("Castle"), responded to a shooting incident on Souder Avenue in Columbus, Ohio. Upon his arrival, Castle took photographs of a bullet hole in the lower third of the front door, and collected a spent projectile as evidence. Castle also performed a gunshot residue test on appellant at 1:30 a.m. that day.
 {¶ 11} Ms. Donna Rose ("Rose"), a forensic scientist for the Ohio Bureau of Criminal Identification and Investigation, also testified on behalf of the State. Rose testified she performed a gunshot residue analysis test of appellant's sample. Rose was questioned regarding the report she prepared in support of her findings, wherein she indicated appellant was positive for gunshot residue on his right hand and negative on his left hand. On cross-examination, Rose acknowledged that a positive gunshot residue result does not necessarily mean an individual fired a weapon, and may simply indicate that an individual was present around gunshot residue.
 {¶ 12} After the State rested its case in chief, defense counsel moved to dismiss case No. 13884 involving Chaffin, as he was not present at trial to testify who shot him. The State contended there was sufficient evidence to demonstrate appellant knowingly caused or attempted to cause physical harm by use of a deadly weapon to both Pennington and Chaffin. The State relied on Pennington's testimony that he witnessed appellant brandish a firearm. The magistrate found the State made its prima facie case as to all charges.
 {¶ 13} Hayes Junior Johnson ("Hayes"), appellant's older brother, testified on behalf of the defense. Hayes testified that on the afternoon of the incident, his cousin Terry Bowen[2] ("Bowen"), took appellant and Hayes to a campground to practice shooting guns. Hayes testified Bowen assisted appellant in shooting his rifle approximately two or three times. Hayes testified appellant's hand was on the barrel of the rifle and Bowen fired the gun. Later that evening, Hayes, appellant, Connie Bonner, ("Bonner"), an individual referred to as "Shane," and Tommy Hunt were walking to a pizza shop located near the incident location. Hayes testified, "by the time when we came back, there was a dude named Mike and some dude named Boo, they pulled up on us and jumped out." (May 24, 2004, Tr. at 64.) Hayes testified that an unidentified black male was also present at the scene. Hayes testified he did not witness anyone shoot a gun that evening, and that appellant was with him during the entire incident. Hayes also specifically stated that he did not witness appellant shoot a firearm on the evening of the incident.
 {¶ 14} On cross-examination, Hayes testified he talked to the police that evening and told them appellant did not shoot at Chaffin's home. Hayes stated that the police took his statement on the date of the incident, yet he was unaware if the police made a report. Further, Hayes indicated he did not talk to the police while appellant was detained at the Juvenile Detention Center.
 {¶ 15} Bonner, a friend of appellant, testified that she, appellant and "a couple other people" were walking away from the pizza shop when Pennington and his other friend approached them and wanted to fight. Bonner testified Pennington began to fight with appellant and Hayes, and that an unidentified black man fired a gun. Thereafter, Bonner testified everyone ran from the scene. Bonner testified she never saw appellant fire a weapon that evening. On cross-examination, Bonner acknowledged she did not make any statement to the police, and had not offered her version of the events until trial.
 {¶ 16} Ruth Johnson ("Ruth"), appellant's mother, testified she was unaware of appellant ever being in possession of a gun. On cross-examination, Ruth testified she was not present for the events that occurred on the date of the incident. Thereafter, the defense rested.
 {¶ 17} At the conclusion of trial, the magistrate found:
I've had an opportunity to review all the witness notes as well as the exhibits that were admitted. Having reviewed all that, the Court finds Shawn's witnesses to not be credible and I will find that the State has proved beyond a reasonable doubt the offense of Felonious Assault on case number 5858 as to Michael Pennington and Improper Discharge of a Firearm into Habitation on that same affidavit. However, the magistrate finds that there was insufficient testimony on behalf of the State concerning Jake Chaffin, so I will dismiss the charge in 13884. finding that all the testimony was that — everything, all the comments and gun and everything were pointed at Michael Pennington and not at Mr. Chaffin. * * *
(May 24, 2004, Tr. at 109-110.) The court also found appellant guilty of the firearm specifications on both offenses involving Pennington.
 {¶ 18} The magistrate journalized her decision on June 10, 2004, which was adopted by the court that same day. In a written decision dated June 14, 2004, the magistrate reaffirmed appellant's delinquency status arising from his convictions for felonious assault and improperly discharging a firearm at or into a habitation. At a dispositional hearing on June 7, 2004, the magistrate committed appellant to the legal custody of the Ohio Department of Youth Services for an indefinite term consisting of a minimum period not to exceed appellant's attainment of the age of 21 years, consecutive to a period of one year for the use of a firearm. Appellant was granted 77 days of credit for his detention in the Franklin County Juvenile Detention Center. Regarding count two, the magistrate indicated that the matter was "closed" and referenced her sentence in count one. The trial court adopted the magistrate's decision on June 14, 2004.
 {¶ 19} Appellant filed objections to the magistrate's decision on June 14, 2004 and on June 22, 2004. After the transcript was prepared, appellant filed a memorandum in support of his objections on July 26, 2004. In his memorandum, appellant contended the magistrate improperly weighed the evidence and failed to hold the State to its burden of proving the charges beyond a reasonable doubt. In particular, appellant argued Pennington was not a credible witness because of his prior criminal record, and his animosity towards appellant. Appellant also argued that the magistrate improperly disregarded Hayes and Bonner's testimony that appellant was not responsible for the shooting. Appellant contended that the magistrate failed to state a reason in support of her conclusion that these witnesses were not credible. On August 2, 2004, the State filed a memorandum contra appellant's objections, in which it argued the evidence supports the magistrate's decision.
 {¶ 20} On July 27, 2004, the magistrate issued her findings of fact and conclusions of law which were filed on August 4, 2004, and adopted by the trial court that same day. Therein, the magistrate reiterated the testimony taken at the hearing. The magistrate concluded that despite his criminal record, Pennington appeared to give truthful testimony, which was supported by the testimony of the other State's witnesses. Conversely, the magistrate found the defense witnesses lacked credibility. As such, the magistrate concluded that the State proved beyond a reasonable doubt all elements of the offense of felonious assault and discharging a firearm at or into a habitation. The magistrate found the State did not prove the elements of felonious assault on the case against Chaffin, and dismissed the same. The magistrate asserted she made the following findings after "having heard the testimony, observed the demeanor of all witnesses, assessed the credibility of all witnesses and reviewed all exhibits." (Findings of fact and conclusions of law, page 2.)
 {¶ 21} The court issued an entry on October 4, 2004, in which it overruled appellant's objections, and affirmed the magistrate's decision adjudicating appellant a delinquent minor, and the decision regarding the disposition. The court found the inconsistencies in Pennington, Hayes and Bonner's testimony did not warrant a reversal of the court's prior order. The court reasoned that Pennington identified appellant as the only person he saw with a firearm moments before a shot was fired into Chaffin's home, and that Rose proved appellant had gunshot residue on his right hand one hour after the alleged incident. The court further found that the magistrate was in the best position to judge the credibility of the witnesses because they testified before her.
 {¶ 22} In support of his sole assignment of error, appellant first argues that his convictions were against the manifest weight of the evidence.
 {¶ 23} A challenge to the manifest weight of the evidence attacks the credibility of the evidence presented. State v. Thompkins (1997),78 Ohio St.3d 380, 387, 678 N.E.2d 541. The court of appeals sits as a "thirteenth juror" and, after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., quoting State v. Martin (1983), 20 Ohio App.3d 172, 175, 20 OBR 215, 485 N.E.2d 717. See, also, Columbus v. Henry (1995),105 Ohio App.3d 545, 547-548, 664 N.E.2d 622. Reversing a conviction as being against the manifest weight of the evidence should be reserved for only the most "exceptional case in which the evidence weighs heavily against the conviction." Thompkins, supra, at 387.
 {¶ 24} "While the jury may take note of the inconsistencies and resolve or discount them accordingly, see [State v.] DeHass, [(1967),10 Ohio St.2d 230, 39 O.O.2d 366, 227 N.E.2d 212], such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." State v. Nivens (May 28, 1996), Franklin App. No. 95APA09-1236, 1996 Ohio App. LEXIS 2245, at *7. It was within the province of the trial court, as the trier of fact, to make the credibility decisions in this case. State v. Lakes (1964), 120 Ohio App. 213, 217, 29 O.O.2d 12, 201 N.E.2d 809 ("It is the province of the jury to determine where the truth probably lies from conflicting statements, not only of different witnesses but by the same witness"); State v. Harris
(1991), 73 Ohio App.3d 57, 63, 596 N.E.2d 563 (even though there was reason to doubt the credibility of the prosecution's chief witness, he was not so unbelievable as to render verdict against the manifest weight). Determinations of credibility and weight of the testimony remain within the province of the trier of fact. DeHass, at paragraph one of the syllabus.
 {¶ 25} Under his manifest weight argument, appellant claims Pennington was not a credible witness. In support, appellant emphasizes Pennington's animosity towards him. Appellant further contends that Pennington's testimony was unreliable because of his prior criminal record. Instead, appellant asserts that Hayes, Rose and Bonner were credible witnesses. He points out that these witnesses support his testimony that he was not in possession of a firearm that evening. Appellant contends the State presented no rebuttal evidence as to how appellant allegedly obtained a firearm after he left the house, and that, as such, the State failed to prove the charges against him beyond a reasonable doubt.
 {¶ 26} This court has consistently held that the weight to be given to inconsistencies in any witness' testimony is a determination within the province of the trier of fact, and such inconsistencies generally do not render a conviction against the manifest weight of the evidence. Moreover, "`where a factual issue depends solely upon a determination of which witnesses to believe, that is the credibility of witnesses, a reviewing court will not, except upon extremely extraordinary circumstances, reverse a factual finding either as being against the manifest weight of the evidence or contrary to law.'" In re Miller (Jan. 27, 1998), Franklin App. No. 97AP-853, 1998 Ohio App. LEXIS 246 at *12, quoting State v. Fluellen (July 30, 1974), Franklin App. No. 74AP-138, 1974 Ohio App. LEXIS 3688, at *7. "In order to justify reversal, the evidence must be such that no reasonable person would believe the testimony which supports the verdict and the judgment." Ibid.
 {¶ 27} Here, Pennington identified appellant as the only individual he witnessed with a firearm just moments before the shot was fired into Chaffin's home. Further, Rose testified that appellant tested positive for gunshot residue on his right hand and negative on his left hand. Based on the record before us, we find there was sufficient competent, credible evidence to support appellant's convictions beyond a reasonable doubt. We decline to substitute our judgment for the trier of fact regarding the credibility of the witnesses or the weight to be given to their testimony. Consequently, we find appellant's conviction for felonious assault and improperly discharging a firearm into a habitation are not against the manifest weight of the evidence.
 {¶ 28} Appellant also argues that the court did not hold the State to its burden of proving the charges against him beyond a reasonable doubt, and that his convictions were not supported by sufficient evidence. In support, appellant reiterates his argument that Pennington was not a credible witness. Appellant contends that Hayes, Bonner and Ruth "at the very least established reasonable doubt, if not actual innocence." (Appellant's Brief at 15.)
 {¶ 29} In her findings of fact and conclusions of law, the magistrate indicated she "assessed the credibility of all witnesses" and found the State "proved beyond a reasonable doubt all elements of the offense of felonious assault and discharging a firearm into a habitation * * *." (July 27, 2004 Findings of Fact and Conclusions of Law at 2.) We have previously determined there was sufficient competent, credible evidence to support appellant's convictions beyond a reasonable doubt, and that the magistrate was in the best position to determine the witnesses' credibility. Therefore, we find the court did hold the State to its burden of proving the charges against him beyond a reasonable doubt, and appellant's argument is without merit.
 {¶ 30} Finally, appellant contends that the magistrate's "stale" findings are entitled to no weight from this court, as the findings were issued more than two months after trial. Juv.R. 40(E)(2) reads in relevant part:
Findings of fact and conclusions of law. If any party makes a request for findings of fact and conclusions of law under Civ. R. 52 or if findings and conclusions are otherwise required by law or by the order of reference, the magistrate's decision shall include findings of fact and conclusions of law. If the request under Civ.R. 52 is made after the magistrate's decision is filed, the magistrate shall include the findings of fact and conclusions of law in an amended magistrate's decision. A magistrate's findings of fact and conclusions of law shall indicate conspicuously that a party shall not assign as error on appeal the court's adoption of any finding of fact or conclusion of law unless the party timely and specifically objects to that finding or conclusion as required by Juv.R. 40(E)(3).
Thus, Juv.R. 40 provides no time frame within which a magistrate is required to issue a decision including findings of fact and conclusions of law.
 {¶ 31} Appellant relies on Current v. Current (July 2, 1991), Shelby App. No. 179-0-8, 1991 Ohio App. LEXIS 3539, in support of his position that a magistrate's findings are unreliable without a contemporaneous factual adjudication. In Current, a divorce action, the trial court requested that counsel for the parties submit proposed findings of fact and conclusions of law. The court had not rendered a decision or entered a decree prior to the plaintiff's death. The plaintiff's daughter, as executor of her father's estate, filed a motion requesting that she be substituted for her father as party plaintiff and that the trial court enter a decree of divorce nunc pro tunc. The trial court dismissed the action. In affirming, the Shelby County Court of Appeals noted that "the record * * * does not disclose a decision rendered by the trial court and the trial court's request for proposed findings by the opposing counsel implies want of contemporaneous factual finding." Id. at *6. In affirming, the Current court held that the trial court did not abuse its discretion in dismissing the action.
 {¶ 32} We find appellant's reliance on Current is misplaced. UnlikeCurrent, the magistrate in this case did issue findings of fact and conclusions of law, which were subsequently adopted by the trial court. Further, the Current court's comment cited by appellant was directed toward the status of the case that is, that death had terminated the marriage prior to the issuance of findings and conclusions related to termination by divorce and does not represent a blanket requirement that a decision be accompanied by contemporaneous factual findings.
 {¶ 33} Appellant also contends the court erred in deferring to the magistrate "as to gestures, manner of testifying, and other non-verbal factors," because she made no specific findings aside from her statement that she observed the demeanor of all witnesses. Further, appellant contends that the magistrate was not impartial. However, appellant has failed to assign these arguments as error, as required by App.R. 12. Because appellant failed to place these arguments before the court, we decline to address the same.
 {¶ 34} For all of the foregoing reasons, appellant's sole assignment of error is overruled, and the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, is affirmed.
Judgment affirmed.
McGrath and Deshler, JJ., concur.
Deshler, J., retired of the Tenth Appellate District assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] In his merit brief, appellant indicates he was charged with committing the offense of felonious assault against Chaffin in Franklin County Juvenile Court case No. 03JU-09-13884.
[2] Bowen passed away prior to trial for reasons unrelated to the instant offense.